Citation Nr: 1542410 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 10-31 196 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for status post left total knee replacement (TKR) (hereinafter left knee disability), to include as secondary to the service-connected status post right TKR disability.

2. Entitlement to an increased rating for degenerative disc disease of L1-L2, L3-L4, and L5-L6 and lumbosacral strain (hereinafter back disability), evaluated as 10 percent disabling prior to March 8, 2011 and from June 1, 2011 to March 27, 2014, and 20 percent disabling from March 27, 2014.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran
ATTORNEY FOR THE BOARD

L. Pelican, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1968 to April 1970 and from January 1979 to January 2002.

These matters come before the Board of Veterans' Appeals (the Board) from October 2008 and April 2009 rating decisions of a Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. Also, a review of the electronic records maintained in Virtual VA was conducted.

During the pendency of the appeal, a June 2012 rating decision assigned a temporary total disability rating for the Veteran's back disability from March 8, 2011 and a rating of 10 percent from June 1, 2011. A July 2014 rating decision assigned the Veteran a 20 percent rating from March 27, 2014. As the 100 percent evaluation assigned for the period of March 8, 2011 to June 1, 2011, represents the maximum possible rating, the appeal is considered satisfied for that period and that stage of evaluation is no longer on appeal. AB v. Brown, 6 Vet. App. 35 (1993). The issue has been recharacterized to reflect the stages remaining before the Board.

The Board also notes that the June 2012 rating decision bifurcated the issue of entitlement to a total disability evaluation based on individual employability (TDIU) and granted the Veteran a TDIU from September 7, 2011. The Veteran has not appealed that determination.

The Veteran had a hearing before the undersigned Veterans' Law Judge in April 2013. A transcript of that proceeding has been associated with the electronic claims file.

This case was previously before the Board in February 2014 and November 2014 when it was remanded for additional development. The Board finds that there has been substantial compliance with the remand directives. 


FINDINGS OF FACT

1. The evidence is at least in relative equipoise as to whether the Veteran's current degenerative disc disease of the left knee is etiologically related to a disease, injury, or event in service.

2. For the period prior to October 24, 2011, excluding the period of time during which the temporary total rating was in effect, the Veteran's back disability manifested by objective findings of flexion to 70 degrees, extension to 20 degrees, left and right lateral flexion to 30 degrees, and left and right lateral rotation to 30 degrees, and subjective complaints of weakness, decreased motion, pain, difficulty sleeping, inability to walk more than a few yards. Forward flexion greater than 30 degrees but not greater than 60 degrees, combined range of motion of the thoracolumbar spine not greater than 120 degrees, muscle spasm or guarding severe enough to result in an abnormal gait or spinal contour, or intervertebral disc syndrome, mild, or with incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months have not been shown.
 
3. From October 24, 2011, the Veteran's back disability manifested by flexion no greater than 60 degrees, extension to 20 degrees, left and right lateral flexion to 30 degrees, and left and right lateral rotation to 30 degrees, with less movement than normal, weakened movement, excess fatigability, pain on movement, and interference with lifting, sitting, standing, climbing, and / or weight-bearing. The Veteran has not been shown to have forward flexion limited to 30 degrees or less, or ankylosis of the thoracolumbar spine, or intervertebral disc syndrome, moderate with recurring attacks, or with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months.


CONCLUSIONS OF LAW

1. Affording the Veteran the benefit of the doubt, the criteria for establishing entitlement to service connection for a left knee disability are met. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. §§ 3.303 (2015).

2. For the period prior to October 24, 2011, excluding the period of time during which the temporary total rating was in effect, the criteria for a rating in excess of 10 percent for the Veteran's back disability have not been met or approximated. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5235-5243 (2015).

3. For the period from October 24, 2011 to March 26, 2014, the criteria for a rating of 20 percent, but no higher, for the Veteran's back disability have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5235-5243 (2015).

4. For the period from March 27, 2014, the criteria for a rating in excess of 20 percent for the Veteran's back disability have not been met or approximated. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5235-5243 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has reviewed all the evidence in the Veteran's electronic claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all the evidence submitted by or on behalf of the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (noting that the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (explaining that the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).
Stegall Considerations

As noted above, the Board remanded this case in February and November 2014. The February 2014 remand instructed the RO to send the Veteran a VCAA notice letter with information regarding how to substantiate a secondary service connection claim, contact the National Personnel Records Center (NPRC) or any other appropriate facility to obtain service treatment records from October 1968 to April 1970, to obtain inpatient clinical records for the Veteran's left lateral menisectomy operation from October 1979, and to afford the Veteran VA examinations for his increased rating claim for his back disability and service connection claim for his left knee. In response, the RO sent the Veteran secondary service connection notice, and made a Personnel Information Exchange System (PIES) request for active duty inpatient clinical records for the operation in question, but did not receive the requested records. Additionally, the Veteran was afforded VA examinations in March 2014. The case was then returned to the Board

In the November 2014 remand, the Board instructed the RO once again attempt to obtain records from the Navy Regional Medical Center for the Veteran's left lateral menisectomy, to request the Veteran authorize the release of any outstanding private medical records relevant to his claims, and to obtain an addendum opinion from the March 2014 VA examiner regarding the etiology of the Veteran's left knee disability. Subsequently, the RO obtained the hospitalization records for the 1979 left knee operation, sent the Veteran a VCAA letter with VA Forms 21-4142 for authorization of release of private medical records, and obtained an addendum medical opinion regarding the Veteran's left knee disability.

Thus, there is substantial compliance with the Board's remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).

Duties to Notify and Assist

The VCAA requires VA to assist a claimant at the time he or she files a claim for benefits. As part of this assistance, VA is required to notify claimants of the evidence that is necessary, or would be of assistance, in substantiating their claims, and provide notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b)(1) (2015); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); Dingess v. Nicholson, 19 Vet. App. 473, 486 (2006).

Letters from VA dated in June 2008 and March 2014 notified the Veteran of how to substantiate a service connection claim, including on a secondary basis. The letters notified the Veteran of the allocation of responsibilities between himself and VA, and of how ratings and effective dates are assigned. 

In a claim for an increased disability rating, the VCAA requirement is general notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

Here, prior to the decision on appeal, a letter from VA dated February 2009 notified the Veteran of what evidence must be shown to support an increased rating claim and informed him of his and VA's respective responsibilities for obtaining relevant records and other evidence in support of his claim. This letter also provided an explanation of how VA determines disability ratings and effective dates. Therefore, the duty to notify is satisfied. 

VA's duty to assist under the VCAA includes helping the Veteran obtain service treatment records and other pertinent records, as well as performing an examination or obtaining a medical opinion when one is necessary to make a decision on the claim. See 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2015).

Here, the Veteran's service treatment records and private treatment records are in the electronic claims file. The Veteran did not authorize the release of any additional records in response to VA's February 2015 letter. Thus, the duty to obtain relevant records on the Veteran's behalf is satisfied. See 38 C.F.R. § 3.159(c) (2015).

The Veteran was provided VA examinations in September 2008, October 2011 and March 2014 and an addendum opinion was obtained in March 2015. Additionally, a Veterans Health Administration (VHA) opinion was obtained in August 2015. As will be discussed in greater detail below, the examiners reviewed the Veteran's past medical history, considered the Veteran's present complaints, examined the Veteran, and provided opinions supported by a rationale such that the Board can render an informed determination. The Board, therefore, concludes that the examination reports are adequate for the purposes of rendering a decision in the instant appeal. See 38 C.F.R. § 4.2 (2015); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

With respect to claims for increased ratings, the duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the Veteran. See Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the Veteran's disability, a VA examination must be conducted. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2015).

The RO provided the Veteran VA examinations in February 2009, October 2011, and March 2014. The examination reports discussed the clinical findings and the Veteran's reported history as necessary to rate the disability under the applicable rating criteria. The examination report also discussed the impact of the disability on the Veteran's daily living. They are, therefore, adequate. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (noting that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

As noted above, the Veteran was afforded a hearing before the undersigned Veterans' Law Judge (VLJ) during which he presented oral argument in support of his claims. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (the Court) held that 38 C.F.R. § 3.103(c)(2) (2015) requires that the VLJ or DRO who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the VLJ identified the issues on appeal, obtained testimony concerning the claims and agreed to hold the record open for an additional 60 days so the Veteran and his representative could obtain additional medical evidence. Significantly, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) (2015), nor has either individual identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the elements necessary to substantiate his claims, and additional, development was ordered on remand. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) (2015).

Accordingly, VA's duty to notify and assist under the VCAA is satisfied, and the Board may proceed with appellate review.

Service Connection - Left Knee Disability

The Veteran contends his left knee disability is related to active service, or was caused or aggravated by his service-connected right knee disability.

Service connection may be established for a disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131 (West 2014). That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b) (2015). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d) (2015).

To establish a right to compensation for a present disability on a direct basis, a Veteran must show: (1) evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999).

In order to establish service connection for a claimed disability on a secondary basis, there must be (1) medical evidence of a current disability; (2) a service-connected disability; and (3) medical evidence of a nexus between the service-connected disease or injury and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

In evaluating the probative value of competent medical evidence, the Court has stated that the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). As such, the Board may appropriately favor the opinion of one competent medical authority over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995); Wensch v. Principi, 15 Vet. App. 362, 367 (2001).

According to VA medical records, the Veteran has a diagnosis of status post left (TKR) with arthritis. See March 2014 VA knee examination. Accordingly, the first Hickson and Wallin elements are met.

As to the second Hickson element, an in-service event, injury, or disease, records indicate the Veteran tore his left lateral meniscus in June 1979 while playing with a flying disc, and subsequently underwent arthroscopy and arthrotomy surgery in September 1979. Additionally, the Veteran is service-connected for a right knee disability. Thus, the second Hickson and Wallin elements are met. 

Regarding the crucial third Hickson and Wallin elements, competent evidence of a nexus between the claimed disability and either an in-service disease or injury or the service-connected disability, there are several opinions of record. 

According to the September 2008 VA examination report, the examiner stated that a nexus opinion could not be rendered without resorting to speculation, explaining that the Veteran's in-service x-rays all pertained to his right knee, and that the Veteran's left knee problems had resolved prior to discharge from service. She further explained that the Veteran had risk factors that could cause or contribute to his left knee degenerative joint disease, and that medical records were silent for any left knee complaints from 1980 to 2002.

The October 2011 VA examination report did not contain a nexus opinion.

In a March 2014 VA examination report, the examiner concluded that the Veteran's left knee disability was not related to service, nor caused or aggravated by his service-connected right knee disability. As to the direct service connection question, the examiner stated that the Veteran's records showed no further treatment for his left knee following his in-service surgery, and that a whole body bone scan performed in 2001 showed normal findings in the left knee, adding that a negative result on such a sensitive test "greatly" decreased the likelihood that the left knee disability was present at that time. 

In a March 2015 addendum opinion, the March 2014 VA examiner stated that it would be mere speculation to opine whether the Veteran's left knee disability was related to an event, injury, or disease in service. She reasoned that a whole body scan conducted in 2001 showed normal findings in the left knee and that despite the Veteran's report that he continuously sought treatment for the knee following his surgery, the cause of his complaints could be from recurrent acute or mechanical strains and not necessarily degenerative arthritis. She reiterated that it would be speculation to attribute the left knee condition to incidents or activities in service.

In August 2015, the Board obtained a VHA opinion. The physician noted that the Veteran experienced a torn lateral meniscus with subsequent arthroscopic lateral meniscectomy, and that his later development of osteoarthritis in the left knee was directly related to the lateral meniscus injury in 1979. He reasoned that there was a direct correlation between the meniscectomy and the subsequent development of degenerative arthritis. Although the Veteran has not been notified of the content of the opinion, such is not prejudicial to him as the Board herein grants the claim. 

The Board has considered the Veteran's lay contentions, including his September 2009 statement in which he asserted that his right knee treatment, including medications and therapy, helped him control the ongoing symptoms in his left knee. 

The September 2008 VA examiner could not render an opinion without resorting to speculation, and the March 2014 VA examiner who had initially provided a negative opinion indicating in March 2015 that an opinion would be speculative. The September 2008 and March 2015 reports both contained speculative reasoning regarding other potential causes of the Veteran's left knee disability, and are thus of limited probative value. The March 2014 VA examiner's initial opinion was based on the lack of complaints for the duration of service following the Veteran's left knee surgery, as well as the 2001 whole body scan results. On the other hand, the August 2015 VHA opinion concluded that it was as likely as not that the Veteran's left knee disability was related to service, based on the direct relationship between arthroscopic meniscectomy surgery and the later development of degenerative arthritis. On the basis of these opinions and the Veteran's lay contentions, the Board finds that the evidence of record is at least in relative equipoise as to whether his left knee arthritis is related to service. Resolving doubt in favor of the Veteran, service connection for a left knee disability on a direct basis is warranted. 

Increased Rating - Back Disability

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2015). The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). In resolving this factual issue, the Board may only consider the specific factors as are enumerated in the applicable rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); Pernorio v. Derwinski, 2 Vet. App. 625, 628 (1992).

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2015). Consideration of the whole recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2015); Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the Veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). Staged ratings are appropriate whenever the factual findings show distinct periods in which a disability exhibits symptoms that warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505, 509-510 (2007).

In determining the applicable disability rating, pertinent regulations do not require that all cases show all findings specified by the Rating Schedule; rather, it is expected in all cases that the findings be sufficiently characteristic as to identify the disease and the resulting disability, and above all, to coordinate the impairment of function with the rating. 38 C.F.R. § 4.21 (2015). Therefore, with respect to the claim at issue herein, the Board will consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity, or the like. 38 C.F.R. § 4.40 (2015).

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss in light of 38 C.F.R. § 4.40 (2015), taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. 38 C.F.R. § 4.14 (2015). The provisions of 38 C.F.R. § 4.40 (2015) and 38 C.F.R. § 4.45 (2015), however, should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996).

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. The rating schedule is also intended to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2015).

With respect to the joints, the factors of disability reside in reductions of their normal excursion of movements in different planes. Inquiry will be directed to these considerations: (a) less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); (b) more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); (c) weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); (d) excess fatigability; (e) incoordination, impaired ability to execute skilled movements smoothly; and (f) pain on movement, swelling, deformity or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing and weight-bearing are related considerations. 38 C.F.R. § 4.45 (2015).

Under the General Rating Formula, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease, disabilities are evaluated as follows:

Forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height (10 percent);

Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis (20 percent);

Forward flexion of the thoracolumbar spine to 30 degrees or less; or with favorable ankylosis of the entire thoracolumbar spine (40 percent);

Unfavorable ankylosis of the entire thoracolumbar spine (50 percent);

Unfavorable ankylosis of the entire spine (100 percent);

38 C.F.R. § 4.71a, General Rating Formula (2015).

When evaluating diseases and injuries of the spine, any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, should be evaluated separately, under an appropriate diagnostic code. Id. at Note (1).

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. Normal combined range of motion of the thoracolumbar spine is 240 degrees. Normal ranges of motion for each component of spinal motion provided are the maximum usable for calculating the combined range of motion. Id. at Note (2) (2015).

Under the Formula for Rating IVDS Based on Incapacitating Episodes, a 10 percent rating is assigned where there are incapacitating episodes having a total duration of at least one week but less than two weeks during the past twelve months. Id. at Note (6) (2015). A 20 percent rating is assigned where there are incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past twelve months. Id. A 40 percent rating is assigned where there are incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past twelve months. Id. A 60 percent rating is assigned where there are incapacitating episodes having a total duration of at least six weeks during the past twelve months. Id. For these purposes, an incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Id.

According to an April 2008 outpatient note from the IPM, the Veteran reported aching, deep pain in his lower back, which he rated as a 6 on the 10 point scale. The Veteran also reported weakness in his lower back. The Veteran admitted transient weakness, but denied numbness and tingling in the upper and lower extremities. Upon active range of motion testing, the Veteran's flexion, extension, side bend, and rotation were all within normal limits. Tenderness was not observed with lumbar spine and paravertebral palpation. The lumbar area muscles were normal in strength and tone. Additionally, the lumbar spine displayed normal alignment, and no evidence of laxity or subluxation was observed. Moreover, the Veteran reported difficulty with sleep which he attributed to pain.

The Veteran was afforded a VA examination in February 2009. The Veteran denied hospitalization or surgery for his back. He endorsed erectile dysfunction, but the examiner stated it was not due to his back disability. The Veteran reported experiencing decreased motion, weakness, and pain, but denied fatigue and spasms. He denied experiencing flare-ups. 

On physical evaluation, the examiner observed that the Veteran had normal posture and head position, but noted the Veteran's gait was antalgic and that he had bilateral knee prosthesis. The Veteran had no abnormal spinal curvatures, and ankylosis was not found. The Veteran had pain with motion with his left and right thoracic sacrospinalis, but no other abnormalities. The examiner noted that he did not have muscle spasm, localized tenderness or guarding severe enough to be responsible for the abnormal gait or abnormal spinal contour. Range of motion testing showed flexion to 70 degrees, extension to 20 degrees, left and right lateral flexion to 30 degrees, and left and right lateral rotation to 30 degrees. The examiner observed pain on active range of motion, as well as following repetitive range of motion testing, but indicated the Veteran did not have additional limitations after repetitive testing. The examiner noted the Veteran did not have any incapacitating episodes of spine disease, but indicated that he was unable to walk more than a few yards. The examiner reported that the Veteran's back disability had significant effects on his usual occupation, including different duties and increased absenteeism resulting from decreased mobility, problems lifting and carrying, and pain. The examiner indicated the Veteran's back disability had no effect on his feeding; moderate effect on chores, shopping, bathing, dressing, toileting, and grooming; severe effect on exercise, recreation, and traveling; and prevented him from playing sports. While the examiner noted that the claims file was not reviewed, the Board does not find that such makes the examination inadequate, as the purpose of the examination was to report the clinical findings pertaining to the service-connected disability, which was accomplished by the examiner.


In September 2009, the Veteran had a lumbar microdiscectomy performed on his left L3-L4 disc. The Veteran underwent physical therapy with Dr. P. C. from November 2009 to present. November 2009 and December 2009 notes indicated the Veteran had decreased flexion with pain, and underwent transforaminal epidural/selective nerve root steroid injections under fluoroscopy at left L3 and L4. In March 2010, the Veteran underwent a lumbar medial branch nerve block at Left L3, Left L4, Left L5 and Left S1. A March 2011 note showed the Veteran had positive straight leg raise on the left side and negative on the right side. During that same month, he underwent surgical decompression and stabilization for recurrent left-sided leg pain and associated mechanical back pain with advanced degenerative disc disease at L3-4, L4-5, and L5-S1. An August 2011 note indicated the Veteran's lumbar flexion, extension, side bend, and rotation were within normal limits. A January 2012 note indicated the Veteran had decreased lumbar flexion and extension. 

The Veteran was afforded a VA examination on October 24, 2011. The Veteran reported experiencing flare-ups that prevented him from sitting or standing for too long. The Veteran reported tenderness to palpation in his bilateral lumbar paravertebral regions. 

Range of motion testing indicated forward flexion to 60 degrees with pain beginning at 60 degrees, extension to 5 with pain at 5 degrees, left and right lateral flexion to 20 degrees with pain beginning at 20 degrees, and left and right lateral rotation to 20 degrees with pain beginning at 20 degrees. Repetitive range of motion testing showed the same results. The examiner reported that the Veteran did not have additional limitation in range of motion following repetitive testing, but did have functional loss in the form of less movement than normal, weakened movement, excess fatigability, pain on movement, and interference with sitting and / or standing and / or weight-bearing. He did not have guarding or muscle spasm. 

The examiner also noted the presence of radiculopathy by way of the sciatic nerve, mild in the left leg and moderate in the right leg; the examiner noted the Veteran had no other neurological abnormalities related to his back disability. The examiner reported a diagnosis of IVDS, explaining that the Veteran had at least 1 week but less than 2 weeks of incapacitating episodes in the last 12 months. The examiner reported that the Veteran used braces regularly and a cane constantly to assist with movement. The examiner added that the Veteran's back disability affected his ability to work, stated that it was at least as likely as not that his back disability had a negative impact on his ability to obtain or retain gainful employment, but observed that the Veteran's back disability did not preclude sedentary employment. He cautioned however that the Veteran was less likely as not able to obtain or retain gainful employment.

The Veteran was afforded a VA examination in March 2014. He denied experiencing flare-ups and bowel or bladder incontinence. Range of motion testing showed flexion to 50 degrees with pain beginning at 50 degrees; extension to 10 degrees with pain beginning at 10 degrees; left and right lateral flexion to 20 degrees with no evidence of pain; left lateral rotation to 20 degrees with no evidence of pain; and right lateral rotation to 25 degrees with no evidence of pain. The examiner reported that the Veteran had no additional limitation in range of motion on repetitive-use testing. He indicated the Veteran had functional impairment of the low back in the form of less movement than normal, pain on movement, interference with sitting, standing, and / or weight-bearing, and lack of endurance. The examiner noted the presence of spasms, but indicated they did not result in abnormal gait or spinal contour. Muscle strength testing was normal throughout and there was no evidence of atrophy. Deep tendon reflexes were hypoactive throughout. He had some difficulty leaning over all the way to take off his socks but reported he could do it in bed or on a low stool at home. The examiner indicated the Veteran did not have IVDS. The examiner also indicated that it would be speculative to report on additional range of motion loss due to flare-ups, as the Veteran did not experience a flare-up on the day of the examination. The examiner noted that the Veteran's back disability affected his ability to work by limiting his ability to lift and curtailed prolonged walking, climbing, and standing. 

Based on the evidence of record, the Board finds that for the period prior to the October 24, 2011, the Veteran's back disability did not warrant a disability rating in excess of 10 percent. April 2008 private treatment notes show the Veteran had flexion, extension, side bend, and rotation within normal limits, but given that the report did not provide actual degree measurements, these findings are of limited probative value. Nevertheless, range of motion testing conducted in February 2009 showed the Veteran had flexion to 70 degrees, extension to 20 degrees, left and right lateral flexion to 30 degrees, and left and right lateral rotation to 30 degrees. Additionally, an August 2011 private treatment record indicated the Veteran's active range of motion of his lower back was within normal limits. A rating in excess of 10 percent under the General Rating formula requires flexion greater than 30 but not greater than 60, or a combined range of motion of the thoracolumbar spine not greater than 120 degrees, or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour. The Veteran's range of motion findings do not support a higher rating for this period, and muscle spasms or guarding severe enough to result in an abnormal gait or spinal contour were not noted during this timeframe. Moreover, the Veteran denied flare-ups on the February 2009 examination and the examiner found there was no additional limitation of motion on repetitive use. Accordingly, a higher rating is not warranted based on Deluca factors.

Although the October 2011 VA examiner noted the Veteran had a diagnosis of IVDS, he indicated that the Veteran had incapacitating episodes with a total duration of at least 1 week but less than 2 weeks in the last 12 months. This finding corresponds to the 10 percent rating for IVDS under the IVDS Rating Formula, and thus affords the Veteran no greater benefit.

For the period from October 24, 2011, the medical evidence of record supports a disability rating no higher than 20 percent. As noted above, the October 2011 VA examination report indicated the Veteran had flexion limited to 60 degrees. Moreover, according to the Veteran's March 2014 VA examination report, range of motion testing showed flexion to 50 degrees with pain beginning at 50 degrees; extension to 10 degrees with pain beginning at 10 degrees; left and right lateral flexion to 20 degrees with no evidence of pain; left lateral rotation to 20 degrees with no evidence of pain; and right lateral rotation to 25 degrees with no evidence of pain. The Veteran has not been shown to have forward flexion limited to 30 degrees or lessor ankylosis of the thoracolumbar spine. The Veteran is similarly not entitled to a higher rating under either the past or current IVDS rating formulas, as the March 2014 VA examiner stated the Veteran did not have a diagnosis of IVDS. The 20 percent rating is assigned from October 24, 2011, but no earlier, as the evidence prior to this date did not show that the criteria for a higher rating were met or approximated as was discussed above. 

The Board acknowledges that the October 2011 and March 2014 VA examination reports indicated the Veteran experienced less movement than normal, weakened movement, excess fatigability, pain on movement, lack of endurance and interference with sitting, standing, and / or weight-bearing. Moreover, although the Veteran reported problems sitting and standing in connection with flare-ups during the October 2011 examination, he had flexion to 60 degrees at that time with no additional loss of motion shown on repetitive use. Moreover, on examination in March 2014, at which time he had flexion to 50 degrees, the Veteran reported that he did not have flare-ups and the examiner determined that information on any additional limitations during a flare-up could not be provided without resorting to speculation. As the examiner explained that she could not provide such information because the Veteran was not having a flare-up at that time, the inability to provide the requested information does not render the examination report inadequate. Furthermore, the examiner did not find any additional limitation of motion on repetitive use. Accordingly, the Veteran's reported limitations are contemplated by the 20 percent rating. 

Thus, considering all pertinent disability factors, to include the DeLuca factors, there is no appropriate basis for assigning a schedular rating in excess of 10 percent prior to October 24, 2011, or in excess of 20 percent thereafter.

The Board also considered the statements of the Veteran and his representative regarding the severity of the Veteran's back disability. In a February 2009 statement, the Veteran wrote that his back pain made getting up out of a chair and every day chores very painful. He added that he was receiving epidural spinal injections which had not helped. In the March 2010 Notice of Disagreement, the Veteran stated that he could not sit longer than 10 to 15 minutes without moving. In his July 2010 VA Form 9, the Veteran wrote that he had incapacitating episodes in the past several years, not prescribed by a doctor, but recommended by doctors. He wrote that he did not run, jump, swim, or play golf, and that he had daily incapacitating episodes. In October 2014, the representative wrote that the Veteran's back disability was not appropriately rated based on the evidence of record. See also, April 2013 Hearing Transcript, pp. 6-8.

The Veteran and his representative are competent to report symptoms because this requires only personal knowledge as it comes through one's senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, while these lay statements were considered, the Board finds the clinical medical evidence of record to be of far greater probative value as the Veteran has been able to exhibit range of motion consistent with ratings no higher than 10 or 20 percent disabling. 

The Veteran is currently service-connected for radiculopathy of each lower extremity. However, the evidence does not support a finding that the Veteran's back disability resulted in any other neurological abnormality, including, but not limited to bowel or bladder impairment. See 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243, Note (1) (2015). The February 2009, October 2011, and March 2014 VA examination reports indicated that the Veteran had no objective neurological abnormalities, aside from the lower extremity radiculopathy and decreased sensation identified during the October 2011 VA and March 2014 examinations, for which the Veteran is separately compensated by way of a June 2012 rating decision. The Veteran did not challenge the effective dates or ratings assigned to the neurological abnormalities of the lower extremities. Accordingly, those matters are not before the Board at this time.

In sum, the preponderance of the evidence is against finding that the Veteran's back disability warrants a rating in excess of 10 percent for the period prior to October 24, 2011, and in excess of 20 percent for the period from October 24, 2011.



Extraschedular Considerations

The Board has also considered whether the Veteran is entitled to referral for compensation on an extraschedular basis. Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors, which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

According to the regulation, an extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2015). An exceptional case is said to include such factors as marked interference with employment or frequent periods of hospitalization as to render impracticable the application of the regular schedular standards. See Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluations for the service-connected disabilities are inadequate. A comparison between the level of severity and symptomatology of the Veteran's back disability with the established criteria shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology.

Specifically, the Veteran's back disability is manifested by limitation of movement to 50 degrees flexion, weakened movement, excess fatigability, pain on movement, muscle spasms, and interference with lifting, sitting, standing, climbing and / or weight-bearing. The criteria practicably represent the average impairment in earning capacity resulting from the Veteran's back disability. See 38 C.F.R. § 4.1 (2015). To the extent that the Veteran reported difficulty sleeping, such was referred to the RO for consideration as a secondary service connection claim. 

The Board also notes that a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (2014). The Veteran has at no point during the current appeal indicated that he believes the assigned schedular rating for his lumbar strain disability and other service-connected disabilities to be inadequate or that the schedular criteria do not adequately describe or reflect his symptomatology. Therefore, referral for consideration of an extraschedular evaluation on this basis is not warranted.

 (CONTINUED ON NEXT PAGE)



ORDER

Entitlement to service connection for a left knee disability is granted.

For the period prior to October 24, 2011, a rating in excess of 10 percent for the Veteran's back disability is denied.

For the period from October 24, 2011 to March 26, 2014, a 20 percent rating, but no higher, for the Veteran's back disability is granted.

For the period from March 27, 2014, a rating in excess of 20 percent for the back disability is denied.



____________________________________________
S. S. TOTH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs